CONFIDENTIAL — SUBJECT TO COURT ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIUS CAPITAL PARTNERS, LP and AURELIUS CAPITAL MASTER, LTD., <br><br> Plaintiffs, <br><br> - against - <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | 07 Civ. 11327 (TPG) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Walter Rieman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Plaintiffs

**CONFIDENTIAL — SUBJECT TO COURT ORDER**

Table of Contents

Page

Preliminary Statement ..................................................................................................1

Statement of Facts.........................................................................................................3

A.    The Aurelius Plaintiffs Beneficially Own $56,925,000 in Original
      Principal Amount of Debt Securities Issued by the Republic of Argentina
      at Issue in this Action .........................................................................................3

B.    Events of Default Have Occurred on the Debt Securities Beneficially
      Owned by The Aurelius Plaintiffs .......................................................................5

C.    The Aurelius Plaintiffs Are Fully Authorized to Sue ..........................................6

D.    The Republic of Argentina Has Submitted to This Court's Jurisdiction and
      Waived Sovereign Immunity ..............................................................................12

E.    This Court Has Repeatedly Granted Summary Judgment to Bondholders
      to Collect on Bonds Issued Under the Fiscal Agency Agreement.......................12

Argument .....................................................................................................................14

THE AURELIUS PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT........14

A.    Applicable Legal Standards................................................................................14

B.    There Is No Genuine Issue of Material Fact Regarding the Aurelius
      Plaintiffs' Entitlement to Summary Judgment ...................................................14

      1.    The Aurelius Plaintiffs Are the Beneficial Owners of the Debt
            Securities at Issue ...................................................................................15

      2.    The Aurelius Plaintiffs Properly Accelerated Maturity of the 2018
            Global Bonds and the 2031 Global Bonds, Thus Making All
            Principal and Accrued Unpaid Interest, Including Capitalized
            Interest, on Those Debt Securities Due and Payable................................16

      3.    The Republic of Argentina Has Conceded Its Default Under the
            Fiscal Agency Agreement and Is Collaterally Estopped from
            Relitigating the Issue of Default .............................................................16

C.    The Republic of Argentina's Affirmative Defenses Fail As a Matter of
      Law ...................................................................................................................18

      1.    The Aurelius Plaintiffs Have Standing to Sue..........................................19

**CONFIDENTIAL — SUBJECT TO COURT ORDER**

2.    The Defense Under Section 489 of the New York Judiciary Law
      Fails as a Matter of Law ...................................................................20

3.    The Defense Based on Periods of Limitations or Prescription Fails
      as a Matter of Law ..........................................................................21

4.    The Affirmative Defenses of Failure to State a Claim, Unclean
      Hands, and Bad Faith Fail as a Matter of Law ...........................................23

Conclusion ..........................................................................................25

**CONFIDENTIAL — SUBJECT TO COURT ORDER**

### Preliminary Statement

Plaintiffs Aurelius Capital Partners, LP ("ACP") and Aurelius Capital Master, Ltd. ("ACM") (together, the "Aurelius Plaintiffs") are entitled to summary judgment on the $56,925,000 in original principal amount of debt securities issued by defendant the Republic of Argentina that the Aurelius Plaintiffs beneficially own at issue in this action, plus accrued and unpaid interest, including capitalized interest, and prejudgment interest.

On this motion, the Aurelius Plaintiffs are submitting documentary evidence as to which there can be no genuine issue of material fact on all elements that the Aurelius Plaintiffs must establish in order to obtain summary judgment. First, the Aurelius Plaintiffs beneficially own $155,556,000 in original principal amount of debt securities issued by the Republic of Argentina pursuant to a Fiscal Agency Agreement between the Republic of Argentina and Bankers Trust Company, as Fiscal Agent, dated as of October 19, 1994 (the "Fiscal Agency Agreement" or "FAA"), together with all accrued and unpaid interest thereon, including capitalized interest. Of that $155,556,000 in original principal amount of debt securities, $56,925,000 in original principal amount of debt securities are at issue in this action. (The Aurelius Plaintiffs already brought an action on April 3, 2007 in this Court against the Republic of Argentina, 07 Civ. 2715 (TPG), for the additional $98,631,000 in original principal amount of debt securities beneficially owned by the Aurelius Plaintiffs.)[1] More specifically, ACP beneficially

---

[1]     In the first action brought by the Aurelius Plaintiffs in this Court, the Court entered an order on April 7, 2008 directing that summary judgment be entered in favor of Aurelius Capital Partners, LP in the amount of $57,105,000, plus all accrued and unpaid interest thereon, including capitalized, and prejudgment interest as allowed by law, and in favor of Aurelius Capital Master, Ltd. in the amount of $41,526,000, plus

owns $31,153,000 in original principal amount of the debt securities at issue in this action, and ACM beneficially owns $25,772,000 in original principal amount of the debt securities at issue in this action.

Second, on December 24, 2001, the Republic of Argentina declared a moratorium on the payment of principal and interest with respect to all of its external debt, including the debt securities issued pursuant to the Fiscal Agency Agreement that are beneficially owned by the Aurelius Plaintiffs. Since that time, the Republic of Argentina has failed to make any payments of principal or interest on these debt securities, although such payments have been due and payable. The failure of the Republic of Argentina to pay principal and interest on these debt securities, and the declaration of a moratorium on the payment of amounts due on these debt securities, each constitute an event of default under the Fiscal Agency Agreement and under the Global Securities evidencing the obligations of the Republic of Argentina respecting the debt securities.

Third, the defaults of the Republic of Argentina entitled the Aurelius Plaintiffs to accelerate, and the Aurelius Plaintiffs have accelerated, the obligation of the Republic of Argentina to pay the entire original principal amounts of debt securities issued pursuant to the Fiscal Agency Agreement that are beneficially owned by the Aurelius Plaintiffs.

In this action, ACP is therefore entitled to summary judgment awarding it the amount of $31,153,000, plus accrued and unpaid interest, including capitalized interest, and prejudgment interest. In this action, ACM is entitled to summary judgment

all accrued and unpaid interest thereon, including capitalized interest, and prejudgment interest as allowed by law.

CONFIDENTIAL — SUBJECT TO COURT ORDER    3

awarding it the amount of $25,722,000, plus accrued and unpaid interest, including capitalized interest, and prejudgment interest.

## Statement of Facts

**A.    The Aurelius Plaintiffs Beneficially Own $56,925,000 in Original Principal Amount of Debt Securities Issued by the Republic of Argentina at Issue in this Action**

The Aurelius Plaintiffs are the beneficial owners of $155,556,000 in original principal amount of debt securities – of which $56,925,000 in original principal amount of debt securities issued by the Republic of Argentina are at issue in this action.[2]

The debt securities owned by the Aurelius Plaintiffs are governed by the Fiscal Agency Agreement. (*See* Brodsky Decl. ¶ 3 & Ex. A.) Specifically, ACP is the beneficial owner of the following debt securities at issue in this action issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, in the original principal amounts stated:

- $17,850,000 in original principal amount of the Global Bonds due June 19, 2018, bearing interest at 12.25%, ISIN No. US040114GG96; issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001 (the "2018 Global Bonds") (*see* Brodsky Decl. ¶ 4 & Ex. B); and

- $13,303,000 in original principal amount of the Global Bonds due June 19, 2031, bearing interest at 12%, ISIN No. US040114GH79; issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001 (the "2031 Global Bonds") (*see* Brodsky Decl. ¶ 4 & Ex. B).

---

[2]    *See* the accompanying Declaration of Mark D. Brodsky dated April 28, 2008 ("Brodsky Decl.") ¶¶ 9-10 & Exs. D, E, F.

The debts securities listed above beneficially owned by ACP are referred to herein as the "ACP Debt Securities."

ACM is the beneficial owner of the following debt securities at issue in this action issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, in the original principal amounts stated:

- $9,150,000 in original principal amount of the 2018 Global Bonds (*see* Brodsky Decl. ¶ 5 & Ex. B); and

- $16,622,000 in original principal amount of the 2031 Global Bonds (*see* Brodsky Decl. ¶ 5 & Ex. B).

The debts securities listed above beneficially owned by ACM are referred to herein as the "ACM Debt Securities" (together with the ACP Debt Securities, the "Debt Securities").

The Debt Securities pay rates of interest calculated in accordance with the Prospectus Supplement. (*See* Brodsky Decl. Ex. B, at S-7, S-8.) Interest on the Debt Securities is payable on the 2018 Global Bonds and the 2031 Global Bonds, on June 19 and December 19 of each year until the original principal, including capitalized interest, is paid, commencing on December 19, 2006.

By Notice of Acceleration dated December 14, 2007, the Aurelius Plaintiffs declared the principal amounts of the 2018 Global Bonds and the 2031 Global Bonds that are beneficially owned by the Aurelius Plaintiffs to be immediately due and payable pursuant to the Fiscal Agency Agreement and the applicable prospectus supplements. (*See* Brodsky Decl. ¶ 8 & Ex. C.) That notice was delivered to the Fiscal Agent on December 14, 2007, and pursuant to section 12 of the Fiscal Agency Agreement, was effective immediately. (Brodsky Decl. Ex. A § 12, at 18.) Accordingly, the entire principal amounts of the 2018 Global Bonds and the 2031 Global Bonds that

CONFIDENTIAL — SUBJECT TO COURT ORDER    5

are beneficially owned by the Aurelius Plaintiffs, together with all accrued and unpaid interest thereon, including capitalized interest, at issue in this action are currently due and payable.

**B.    Events of Default Have Occurred on the Debt Securities Beneficially Owned by The Aurelius Plaintiffs**

Under section 12(a) of the Fiscal Agency Agreement, an Event of Default occurs if "the Republic fails to pay any principal of any of the Securities of [a] Series [issued under the Fiscal Agency Agreement] when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days." (Brodsky Decl. Ex. A § 12, at 17.) Under section 12(d) of the Fiscal Agency Agreement, an Event of Default also occurs if "a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic." (*Id.* Ex. A § 12, at 18.) Furthermore, section 12 provides that if an Event of Default pursuant to section 12(a) and (d) occurs for a Series of Securities, "each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic . . . ." (*Id.* Ex. A § 12, at 18.)

The Republic of Argentina has failed to make any payments of interest or principal on the Debt Securities since December 2001. (*See* Brodsky Decl. ¶ 7.) In the Republic of Argentina's Answer to the Aurelius Plaintiffs' Complaint (the "Answer"), the Republic of Argentina admitted that "since December 2001 it has not paid interest or

principal on nonperforming debt."[3]  The Republic of Argentina's continuing nonpayment of interest and principal when due constitutes an event of default under the Fiscal Agency Agreement.  (Brodsky Decl. Ex. A § 12, at 17.)

"On December 24, 2001, the Republic [of Argentina] declared a moratorium on payments of principal and interest on [its] external debt." *Mazzini* v. *Republic of Arg.*, No. 03 Civ. 8120 (TPG), 2005 WL 743090, at *1 (S.D.N.Y. Mar. 31, 2005); *see also, e.g.*, *FFI Fund, Ltd.* v. *Republic of Arg.*, No. 05 Civ. 3328 (TPG), 2006 WL 435734, at *1 (S.D.N.Y. Feb. 23, 2006); *Million Air Corp.* v. *Republic of Arg.*, No. 04 Civ. 1048 (TPG), 2005 WL 2656126, at *1 (S.D.N.Y. Oct. 17, 2005); *Allan Applestein TTEE FBO D.C.A.* v. *Republic of Arg.*, No. 02 Civ. 4124 (TPG), 2003 WL 22743762, at *2 (S.D.N.Y. Nov. 20, 2003); *EM Ltd.* v. *Republic of Arg.*, No. 03 Civ. 2507 (TPG), 2003 WL 22120745, at *2 (S.D.N.Y. Sept. 12, 2003); *Lightwater Corp.* v. *Republic of Arg.*, Nos. 02 Civ. 3804, 3808 & 5932 (TPG), 2003 WL 1878420, at *2 (S.D.N.Y. Apr. 14, 2003).  The declaration of that moratorium constituted a separate and independent event of default under the Fiscal Agency Agreement.  (*See* Brodsky Decl. Ex. A § 12, at 18.)

## C.    The Aurelius Plaintiffs Are Fully Authorized to Sue

The Aurelius Plaintiffs are the beneficial owners of the Debt Securities at issue in this suit.  (*See* Brodsky Decl. ¶¶ 9-10 & Exs. D, E, F.)  This Court has summarized the way in which beneficial owners acquire beneficial ownership of bonds issued pursuant to the Fiscal Agency Agreement, including the Debt Securities at issue here, as follows:

---

[3]    *See* the accompanying Declaration of Charles N. Rose dated April 28, 2008 ("Rose Decl.") Ex. B ¶¶ 4, 23.

> The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest.

*Million Air Corp.*, 2005 WL 2656126, at *2. The Debt Securities are "bonds" within the meaning of this passage. The registered holder of the Debt Securities is Cede & Company, which is the nominee and alter ego of The Depository Trust Company. (*See* Brodsky Decl. Ex. B, at S-49.) The Depository for the Debt Securities, as the term "Depository" is used in the Fiscal Agency Agreement, prospectus supplements, and related documents, is The Depository Trust Company. (*See id.* Ex. A § 5, at 6-9.)

**REDACTED**

In other actions, the Republic of Argentina initially argued that a beneficial owner of bonds issued pursuant to the Fiscal Agency Agreement must obtain authorization from the registered holder of the bonds before the beneficial owner may sue Argentina. *See Fontana* v. *Republic of Arg.*, 415 F.3d 238, 241 (2d Cir. 2005) ("Argentina concedes in its brief that the plaintiffs 'would have been able to bring suit . . .

CONFIDENTIAL — SUBJECT TO COURT ORDER    8

if authorized by DTC or Cede.'"). More recently, the Republic of Argentina has

withdrawn in part from that position:

> The Republic has now agreed to waive objections based on lack of
> authorization where a plaintiff provides confirmation slips or other
> proof of purchase for any purchase of beneficial interests on or
> after the default date of December 24, 2001, and where the court
> makes a finding at an appropriate time of current ownership.

*Million Air Corp.*, 2005 WL 2656126, at *3.

**REDACTED**

The Aurelius Plaintiffs accordingly fall within

the scope of the agreement by the Republic of Argentina to waive objections based on

alleged lack of authorization.

In any event, the Aurelius Plaintiffs obtained authorization to sue from

Cede & Company, which is the registered holder of the Certificate and the nominee of the

Depository, and from the Aurelius Plaintiffs' Participant, Goldman Sachs.  Section 5 of

the Fiscal Agency Agreement, which deals with authorization to sue, provides in part as

follows:

> The Republic understands that under existing industry practices, if
> . . . an owner of a beneficial interest in such Global Security
> desires to take any action which a holder is entitled to take under
> the Fiscal Agency Agreement, the Depositary for such Global
> Security would authorize the Participants holding the relevant
> interests to take such action, and such Participants would authorize
> beneficial owners owning through such Participants to take such

action or would otherwise act upon the instructions of beneficial owners holding through them.

(*Id.* Ex. A § 5, at 7.)

For each of the Debt Securities at issue in this action, Cede & Company issued a document dated December 6, 2007, that authorizes this lawsuit. For example, with regard to the 2018 Global Bonds beneficially owned by ACP, the document issued by Cede & Company provides in part as follows:

> Cede & Co. is the nominee of The Depository Trust Company ("DTC"), and Cede & Co. is the holder of record, as of even date herewith, of the following debt securities issued by the Republic of Argentina pursuant to a Fiscal Agency Agreement between the Republic of Argentina and Bankers Trust Company, as Fiscal Agent, dated as of October 19, 1994 (the "Fiscal Agency Agreement"):

> $22,232,000 in original principal amount of the Global Bonds due June 19, 2018, bearing interest at 12.25%, CUSIP No. 040114GG9 together with all accrued and unpaid interest thereon, including capitalized interest.

> The debt securities listed above are referred to herein as the "ACP Debt Securities."

> DTC is informed by its participant, Goldman Sachs & Co. ("Participant"), which is also the custodian of the ACP Debt Securities, that the ACP Debt Securities, which were credited to Participant's DTC account as of December 6, 2007, are held for the account of Aurelius Capital Partners, LP.

> At the request of Participant, on behalf of Aurelius Capital Partners, LP, Cede & Co., as the nominee of DTC, the Depositary, and as holder of record of the ACP Debt Securities, hereby authorizes the Participant to take the following actions:

> **With respect to the ACP Debt Securities, which were held for the account of Aurelius Capital Partners, LP as of December 6, 2007, to provide notice to the Republic of Argentina that the principal amounts of the ACP Debt Securities, or any of them, are due and payable immediately pursuant to the Fiscal Agency Agreement and the related Global Securities, and to commence and prosecute litigation,**

> arbitration, or other dispute resolution procedures against the
> Republic of Argentina relating to breaches of the obligations of
> the Republic of Argentina as set out in the documents relevant
> to the ACP Debt Securities, which actions Cede & Co., as
> holder of the ACP Debt Securities, is entitled to take.

(*Id.* Ex. G.) Under Section 5 of the Fiscal Agency Agreement, these documents

constitute authorization by the registered holder of the Debt Securities and by the

Depository to Goldman Sachs, as Participant, to take the actions described in those

documents.

Goldman Sachs, as Participant, has in turn authorized the Aurelius

Plaintiffs to prosecute this litigation against the Republic of Argentina. Goldman Sachs

granted that authorization by sending letters dated December 7, 2007, to the Aurelius

Plaintiffs. With respect to the ACP Debt Securities at issue in this action, Goldman

Sachs's letter dated December 7, 2007, provides in part as follows:

> Goldman Sachs & Co. ("Goldman Sachs") is a Participant
> of The Depository Trust Company ("DTC"). As of the date of this
> letter, Goldman Sachs, as custodian, holds the following debt
> securities issued by the Republic of Argentina pursuant to a Fiscal
> Agency Agreement between the Republic of Argentina and
> Bankers Trust Company, as Fiscal Agent, dated October 19, 1994
> (the "Fiscal Agency Agreement"):
>
> a) $22,232,000 in original principal amount of the
> Global Bonds due June 19, 2018, bearing interest at
> 12.25%, ISIN No. US040114GG96, together with
> all accrued and unpaid interest thereon, including
> capitalized interest.
>
> b) $21,542,000 in original principal amount of the
> Global Bonds, due June 19, 2031, bearing interest at
> 12%, ISIN No. US040114GH79, together with all
> accrued and unpaid interest thereon, including
> capitalized interest.

The debt securities listed above, which are held for the
account of Aurelius Capital Partners, LP, are referred to herein as
the "ACP Debt Securities." As of the date of this letter, the ACP

Debt Securities are registered in the name of Cede & Co., which is a nominee of DTC, and have been credited to Goldman Sachs's participant account at DTC.

Cede & Co., in letters dated December 6, 2007, authorized Goldman Sachs:

> **With respect to the ACP Debt Securities, which were held for the account of Aurelius Capital Partners, LP as of December 6, 2007, to provide notice to the Republic of Argentina that the principal amounts of the ACP Debt Securities, or any of them, are due and payable immediately pursuant to the Fiscal Agency Agreement and the related Global Securities, and to commence and prosecute litigation, arbitration, or other dispute resolution procedures against the Republic of Argentina as set out in the documents relevant to the ACP Debt Securities, which actions Cede & Co., as holder of the ACP Debt Securities is entitled to take.**

Having received such authorization from Cede & Co., Goldman Sachs, in turn, hereby authorizes Aurelius Capital Partners, LP to provide the above-described notice and to commence and prosecute the above-described litigation, arbitration, or other dispute resolution procedures against the Republic of Argentina.

(*Id.* Ex. H.)  Goldman Sachs sent a similar authorization letter to ACM with respect to the Debt Securities issued pursuant to the Fiscal Agency Agreement.  (*Id.* Ex. H.)

Accordingly, the Aurelius Plaintiffs are fully authorized to bring this action.

**D.      The Republic of Argentina Has Submitted to This Court's Jurisdiction and Waived Sovereign Immunity**

In the Fiscal Agency Agreement, the Republic of Argentina expressly waived any claim of sovereign immunity and submitted to the jurisdiction of this Court. (*See id.* Ex. A § 22, at 29-30.)  The Fiscal Agency Agreement also provides that it, and the notes issued pursuant to it, shall be governed by and construed in accordance with the laws of the State of New York.  (*See id.* Ex. A § 23, at 30.)

**E.      This Court Has Repeatedly Granted Summary Judgment to Bondholders to Collect on Bonds Issued Under the Fiscal Agency Agreement**

This Court has repeatedly granted summary judgment against the Republic of Argentina in related cases to bondholders, including the Aurelius Plaintiffs,[4] for the principal amount of their bonds plus accrued interest.  *See FFI Fund, Ltd.*, 2006 WL 435734, at *2 (granting summary judgment and ordering that judgment be entered "for the principal amount of the bonds plus accrued interest"); *Million Air Corp.*, 2005 WL 2656126, at *3 (granting summary judgment to plaintiff for "the principal amount of the bonds plus accrued interest"); *Mazzini*, 2005 WL 743090, at *4 (granting summary judgment to plaintiffs owning bonds issued under the Fiscal Agency Agreement); *Applestein,* 2003 WL 22743762, at *3 (granting summary judgment to Allan Applestein TTEE FBO D.C.A. Grantor Trust "for the principal amount of the bonds plus accrued interest"); *EM Ltd.*, 2003 WL 22120745, at *4 (granting summary judgment to EM Ltd. for the "par value of the bonds payable in U.S. Dollars, plus accrued interest"); *Lightwater*, 2003 WL 1878420, at *6 (granting summary judgment to plaintiff

---

[4]      *See* Rose Decl. Ex. C (Court order entered on April 7, 2008 granting summary judgment to ACP and ACM for $98,631,000 in original principal amount of debt securities, plus accrued and unpaid interest thereon, including capitalized interest).

CONFIDENTIAL — SUBJECT TO COURT ORDER   13

bondholders Lightwater Corporation, Old Castle Holdings, Ltd., and Macrotecnic

International Corp. for the "principal amounts of their bonds plus accrued interest").[5]

---

[5] *See also, e.g., Franceschi* v. *Republic of Arg.*, No. 03 Civ. 4693 (TPG), 2006 WL 2528460 (S.D.N.Y. Aug. 31, 2006); *Etevob* v. *Republic of Arg.*, No. 03 Civ. 1680 (TPG), 2006 WL 2528463 (S.D.N.Y. Aug. 31, 2006); *Capital Ventures Int'l* v. *Republic of Arg.*, No. 06 Civ. 207 (TPG), 2006 WL 2521333 (S.D.N.Y. Aug. 30, 2006); *Botti* v. *Republic of Arg.*, No. 05 Civ. 8687 (TPG), 2006 WL 2555984 (S.D.N.Y. Aug. 25, 2006); *Ferri* v. *Republic of Arg.*, No. 05 Civ. 2943 (TPG), 2006 WL 2462910 (S.D.N.Y. Aug. 23, 2006); *Martinez* v. *Republic of Arg.*, No. 05 Civ. 2521 (TPG), 2006 WL 2462913 (S.D.N.Y. Aug. 23, 2006); *Legnaro* v. *Republic of Arg.*, No. 05 Civ. 178 (TPG), 2006 WL 2462917 (S.D.N.Y. Aug. 23, 2006); *Lisi* v. *Republic of Arg.*, No. 05 Civ. 6002 (TPG), 2006 WL 2462918 (S.D.N.Y. Aug. 23, 2006); *Fedecostante* v. *Republic of Arg.*, No. 05 Civ. 4466 (TPG), 2006 WL 2462921 (S.D.N.Y. Aug. 23, 2006); *Bettoni* v. *Republic of Arg.*, No. 05 Civ. 4299 (TPG), 2006 WL 2462923 (S.D.N.Y. Aug. 23, 2006); *Rigueiro* v. *Republic of Arg.*, No. 05 Civ. 3089 (TPG), 2006 WL 2462926 (S.D.N.Y. Aug. 23, 2006); *Lovati* v. *Republic of Arg.*, No. 05 Civ. 8159 (TPG), 2006 WL 2463551 (S.D.N.Y. Aug. 23, 2006); *Rossini* v. *Republic of Arg.*, No. 05 Civ. 6200 (TPG), 2006 WL 2463559 (S.D.N.Y. Aug. 23, 2006); *Buzcat* v. *Republic of Arg.*, No. 04 Civ. 7056 (TPG), 2006 WL 2336918 (S.D.N.Y. Aug. 11, 2006); *Consolini* v. *Republic of Arg.*, No. 05 Civ. 177 (TPG), 2006 WL 2266409 (S.D.N.Y. Aug. 7, 2006); *Rosa* v. *Republic of Arg.*, No. 04 Civ. 7504 (TPG), 2006 WL 2266451 (S.D.N.Y. Aug. 7, 2006); *Denchu Inv. Corp.* v. *Republic of Arg.*, No. 03 Civ. 9538 (TPG), 2006 WL 2242531 (S.D.N.Y. Aug. 3, 2006); *NML Capital, Ltd.* v. *Republic of Arg.*, No. 05 Civ. 2434 (TPG), 2006 WL 1294853 (S.D.N.Y. May 10, 2006).

CONFIDENTIAL — SUBJECT TO COURT ORDER    14

## Argument

## THE AURELIUS PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

**A.    Applicable Legal Standards**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *June* v. *Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004). Summary judgment is particularly appropriate where, as here, the issue before the Court is the interpretation of an unambiguous contract. *See Omni Quartz, Ltd.* v. *CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.").

**B.    There Is No Genuine Issue of Material Fact Regarding the Aurelius Plaintiffs' Entitlement to Summary Judgment**

A plaintiff suing upon a bond or note establishes a prima facie entitlement to summary judgment by demonstrating the existence of the debt obligation and the defendant's default. *See Valley Nat'l Bank* v. *Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453 (S.D.N.Y. 2003) ("In cases involving notes and guaranties . . . a plaintiff establishes its prima facie entitlement to summary judgment by establishing the execution of the agreements at issue and nonpayment thereunder." (citation and internal quotation marks omitted)); *Koeben* v. *Altchek*, No. 94 Civ. 8484 (PKL), 1997 WL 83290, at *2 (S.D.N.Y. Feb. 26, 1997) ("To recover payment on a promissory note, a plaintiff must prove the existence of the note and defendant's default thereunder."). Once a creditor has established a prima facie entitlement to summary judgment, "the burden then shifts to the

non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Orix Credit Alliance, Inc.* v. *Bell Realty, Inc.*, No. 93 Civ. 4949 (LAP), 1995 WL 505891, at *3 (S.D.N.Y. Aug. 23, 1995).

This Court has held that plaintiffs who establish their ownership of a bond issued by the Republic of Argentina under the Fiscal Agency Agreement and the Republic of Argentina's default are entitled to summary judgment. *See, e.g., Mazzini*, 2005 WL 743090, at *4. The Court "will grant summary judgment to plaintiffs who provide (1) evidence of ownership of a particular bond, and (2) evidence specifically identifying that bond. In most cases, a properly executed declaration and an account statement will be sufficient to prove that the bonds plaintiffs claim to own are in fact the bonds held in their accounts." *Id.* In *Million Air Corp.*, the Court clarified that references in its prior opinions to "bonds" owned by plaintiffs "actually mean[t] 'beneficial interests in bonds'" owned by plaintiffs. 2005 WL 2656126, at *1. As demonstrated below, the Aurelius Plaintiffs have met the standard announced by the Court.

      1.      **The Aurelius Plaintiffs Are the Beneficial Owners of the Debt Securities at Issue**

**REDACTED**

The declaration also contains a tabular

summary of identifying information concerning the Aurelius Plaintiffs' beneficial

ownership of Debt Securities at issue in this action (*id.* ¶ 13) that is similar in format to

the tables contained in this Court's decision in *Million Air Corp.*, 2005 WL 2656126, at

*2.

> **2.    The Aurelius Plaintiffs Properly Accelerated
> Maturity of the 2018 Global Bonds and the 2031
> Global Bonds, Thus Making All Principal and
> Accrued Unpaid Interest, Including Capitalized
> Interest, on Those Debt Securities Due and
> Payable**

By Notice of Acceleration dated December 14, 2007, the Aurelius

Plaintiffs declared the principal amounts of the 2018 Global Bonds and the 2031 Global

Bonds that are beneficially owned by the Aurelius Plaintiffs at issue in this action to be

immediately due and payable pursuant to the Fiscal Agency Agreement and the

respective prospectus supplements. (*See id.* ¶ 8 & Ex. C.) That notice was delivered to

the Fiscal Agent on December 14, 2007, and pursuant to section 12 of the Fiscal Agency

Agreement, was effective immediately. (*Id.* Ex. A § 12, at 18.) Accordingly, the

Republic of Argentina was required to pay—but failed to pay—the entire principal

amounts of the 2018 Global Bonds and the 2031 Global Bonds that are beneficially

owned by the Aurelius Plaintiffs at issue in this action, together with all accrued and

unpaid interest thereon, including capitalized interest.

> **3.    The Republic of Argentina Has Conceded Its
> Default Under the Fiscal Agency Agreement and
> Is Collaterally Estopped from Relitigating the
> Issue of Default**

The Republic of Argentina's default is uncontradicted. The Republic of

Argentina has not paid the principal amount of the Debt Securities, despite the fact that

the Debt Securities have been accelerated, and has made no interest payments since

December 2001. (*See* Brodsky Decl. ¶¶ 7-8; *see also* Rose Decl. Ex. B ¶¶ 4, 23 (admission by Republic of Argentina that "since December 2001 it has not paid interest or principal on nonperforming debt.").) The nonpayment of principal when due, and the failure to make a payment of interest for 30 days after the applicable payment date, constitute Events of Default. (*See* Brodsky Decl. Ex. A § 12(a), at 17.) Those defaults are continuing.

The Republic of Argentina also caused a separate and independent Event of Default under the Fiscal Agency Agreement to occur when on "December 24, 2001 [it] declared a moratorium on payments of principal and interest on [its] external debt . . . ." *Mazzini*, 2005 WL 743090, at *1; *see also Capital Ventures Int'l* v. *Republic of Arg.*, 443 F.3d 214, 217 (2d Cir. 2006) ("In December 2001, [Argentina] suspended payments of interest and principal on much of its foreign debt, . . . . [which] constituted an Event of Default under the Fiscal Agency Agreement . . . ."). (*See also* Brodsky Decl. ¶ 7; *id.* Ex. A § 12(d), at 18 (moratorium on the payment of the Republic of Argentina's public external indebtedness constitutes an Event of Default).)

In any event, the Republic of Argentina is collaterally estopped from relitigating the issue of its default under the Fiscal Agency Agreement. This Court has already granted summary judgment in multiple different actions to bondholders, including the Aurelius Plaintiffs (*see supra* note 5), based on findings that the Republic of Argentina breached its contractual obligations by failing to make payments on bonds issued pursuant to the Fiscal Agency Agreement, and by declaring a moratorium on the payment of its external debt. Collateral estoppel forecloses the Republic of Argentina from relitigating the issue of default in this case. *See LeBlanc-Sternberg* v. *Fletcher*, 67

F.3d 412, 433-34 (2d Cir. 1995) (citing *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.4 (1979)). In prior cases, the Court ruled that the Republic of Argentina is in default and that bondholders are entitled to payment of amounts owed under the Fiscal Agency Agreement and related documentation. *See, e.g.*, *FFI Fund, Ltd.*, 2006 WL 435734, at *1-2, *Million Air Corp.*, 2005 WL 2656126, at *1-2; *Mazzini*, 2005 WL 743090, at *3-4; *Applestein,* 2003 WL 22743762, at *2-3; *EM Ltd.*, 2003 WL 22120745, at *2; *Lightwater Corp.*, 2003 WL 1878420, at *4. As the Court has recognized in granting summary judgment in those cases, the issue of the Republic of Argentina's default was actually litigated and decided in *Lightwater Corp.* after the Court afforded the Republic of Argentina a full and fair opportunity for litigation.

## C.    The Republic of Argentina's Affirmative Defenses Fail As a Matter of Law

The Republic of Argentina's affirmative defenses fail as a matter of law. The Republic of Argentina raises eight affirmative defenses: (i) failure to state a claim; (ii) the act of state doctrine; (iii) "[t]o the extent Plaintiff is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have"; (iv) unclean hands; (v) the doctrine of abuse of rights; (vi) N.Y. Judiciary Law § 489; (vii) statute of limitations/prescription; and (viii) lack of standing. (Rose Decl. Ex. B ¶¶ 29-36.)

Once a creditor has established a prima facie entitlement to summary judgment, as the Aurelius Plaintiffs have here, "the burden then shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Orix Credit Alliance, Inc.* v. *Bell Realty, Inc.*, No. 93 Civ. 4949 (LAP), 1995 WL 505891, at *3 (S.D.N.Y. Aug. 23, 1995). The Republic of Argentina cannot carry that burden.

The Republic of Argentina concedes that the Court has already addressed and rejected two of its defenses: the act of state doctrine and abuse of rights. (*See* Rose Decl. Ex. B, at 7 n.l.) That concession accurately reflects this Court's rulings in prior actions by holders of bonds issued pursuant to the Fiscal Agency Agreement against the Republic of Argentina. *See, e.g., Lightwater*, 2003 WL 1878420, at *4-5 (rejecting defenses of comity, champerty under N.Y. Judicial Law § 489, act of state doctrine, and abuse of rights); *Applestein*, 2003 WL 22743762, at *2 (finding nothing to distinguish case from *Lightwater* with respect to plaintiffs' "unconditional legal right to collect on their bonds"); *EM Ltd.*, 2003 WL 22120745, at *2 (same). The Republic of Argentina also concedes that it pleads the act of state doctrine and abuse of rights only "to preserve them for potential appellate review." (Rose Decl., Ex. B, at 7 n.l.) None of the affirmative defenses that the Republic of Argentina raises has any merit.[6]

### 1.    The Aurelius Plaintiffs Have Standing to Sue

The Aurelius Plaintiffs are fully authorized to sue to collect on the Debt Securities because they are the beneficial owners of the Debt Securities at issue. The Aurelius Plaintiffs' action falls within the scope of the actions in which the Republic of Argentina has agreed to waive objections based on alleged lack of authorization. *Supra*, pp. 7-8. And in any event, the Aurelius Plaintiffs obtained authorizations to sue that would plainly satisfy any requirement that Section 5 of the Fiscal Agency Agreement might be thought to impose. *Supra*, pp. 8-11.

---

[6]    In addition, the Republic of Argentina is collaterally estopped by determinations of fact made by the Court in connection with the Court's rejection of affirmative defenses asserted by the Republic of Argentina in related bondholder securities actions. *See supra*, pp. 17-18.

### 2.  The Defense Under Section 489 of the New York Judiciary Law Fails as a Matter of Law

The Answer filed by the Republic of Argentina asserts that the Aurelius Plaintiffs' action is barred by section 489 of the New York Judiciary Law.  (Rose Decl. Ex. B, ¶ 34.)  As the Answer acknowledges in a footnote, this Court has previously ruled against the Republic of Argentina in other actions with respect to the same alleged defense.  (*See id.* Ex. B, at 7 n.1.)  The Republic of Argentina nonetheless asserts that "facts may exist in the present case" that call for a different outcome.  (*Id.*)  There are no such facts.

Subdivision 1 of section 489 prohibits certain assignments of bonds and certain other financial instruments.  This Court, however, has considered and rejected the Republic of Argentina's supposed defense under section 489 in previous related suits to enforce debt issued by the Republic of Argentina under the Fiscal Agency Agreement.

> In *Elliott Assoc.* v. *Banco de la Nation*, 194 F.3d 363 (2d Cir. 1999), the Second Circuit provided an exhaustive discussion of how [N.Y. Judiciary Law] § 489 had been interpreted by the New York courts.  The Circuit concluded that § 489 applies only where the primary purpose of the bond purchase is to enable the purchaser to commence a suit, to the exclusion of any other purpose.  An example often used in New York cases is that of an attorney who purchases a bond with the intent of suing on it and obtaining costs.  *Id.* at 373-75. But where a bond is purchased with the intent to collect on that bond, the statute is not violated even though there is also an intention to collect by a lawsuit if necessary.  *Id.* at 379.

> The circumstances of the bond purchases by Lightwater and Old Castle demonstrate conclusively that these plaintiffs bought their bonds with the intention of collecting on them, even though they clearly had in mind that lawsuits might be necessary.  There was no violation of § 489, as interpreted by the New York courts and *Elliott*.  The court does not believe that discovery and trial could develop any set of facts which would contradict these conclusions.

*Lightwater*, 2003 WL 1878420, at *4-5; *see also Mazzini*, 2005 WL 743090, at *4 ("This Court has already considered the issue of discovery in regard to [the champerty] defense. The Court believes, as it did in those cases, that discovery would not establish any set of facts which would establish a successful champerty defense.") (citations omitted); *EM Ltd.*, 2003 WL 22120745, at *3 (same).[7]

### 3. The Defense Based on Periods of Limitations or Prescription Fails as a Matter of Law

The Republic of Argentina's Seventh Affirmative Defense, which asserts a conditional and partial defense based on allegedly applicable periods of limitation or prescription, also fails as a matter of law. That is so because the Aurelius Plaintiffs plainly commenced this action within any potentially applicable period of prescription or limitation.

Under the prospectuses governing the Debt Securities at issue, "[t]he debt securities will become void unless claimed within ten years from the due date for payment. Interest payments on the debt securities will become void unless claimed within five years from the due date for payment.'" (*See* Brodsky Decl. Ex. B, at 11.) According to the Fiscal Agency Agreement, the "Relevant Date" that triggers

---

[7] Furthermore, Section 489 does not even apply to the transactions involved here. The prohibition in section 489 does not apply to transactions involving an aggregate purchase price of at least $500,000, *see* N.Y. Jud. Law § 489(2) (McKinney 2005), where the relevant action or proceeding was commenced on or after August 17, 2004, *see* Act of Aug. 17, 2004, ch. 394, sec. 2, 2004 N.Y. Laws 3207, *reprinted in* N.Y. Jud. Law § 489 Historical and Statutory Notes (McKinney 2005), as this action was.


**REDACTED**

commencement of the periods of prescription cannot occur earlier than the date on which payment becomes due. (*See id.* Ex. A, at 11.)

Under the terms of the Debt Securities, interest is due and payable twice each year until the principal is paid. (*See supra* p. 4.) As the Republic of Argentina has admitted, "since December 2001 it has not paid interest or principal on nonperforming debt." (*See* Rose Decl. Ex. B ¶¶ 4, 23.) Thus, the first payment of interest under the Debt Securities at issue in this action that the Republic of Argentina failed to pay when due was the interest payment due on December 19, 2006, for each of the 2018 Global Bonds and 2031 Global Bonds. The claims of the Aurelius Plaintiffs in respect of those payments cannot be contractually prescribed until, at the earliest, December 20, 2011. The Aurelius Plaintiffs commenced this action on December 17, 2007, which is before that date. The Aurelius Plaintiffs consequently commenced this action within the five-year period of contractual prescription for the first missed interest payment[8] and for all subsequent missed interest payments on each of the Debt Securities. As noted above, the period of contractual prescription for principal payments is ten years, and the Aurelius Plaintiffs' action was brought less than ten years after the occurrence of every arguably relevant event.

The Aurelius Plaintiffs also brought their claims within the six-year limitations period applicable to actions on bonds and notes. *See* N.Y. C.P.L.R. 213(4) (McKinney 2005) (actions on bond or note to be commenced within six years)). The Aurelius Plaintiffs filed their complaint less than six years after the occurrence of every

---

[8]   The Aurelius Plaintiffs do not concede that the five-year period of contractual prescription for interest payments is necessarily enforceable under New York law. As the Aurelius Plaintiffs sued within that period, however, the Court need not determine the enforceability of that contractual provision.

arguably relevant event. For these reasons, the Republic of Argentina's Seventh Affirmative Defense fails as a matter of law.

### 4.    The Affirmative Defenses of Failure to State a Claim, Unclean Hands, and Bad Faith Fail as a Matter of Law

The other affirmative defenses that the Republic of Argentina raises— failure to state a claim, unclean hands, and bad faith—also fail as a matter of law.

The Republic of Argentina's defense of failure to state a claim is unsupportable boilerplate. The Aurelius Plaintiffs have alleged all the elements of a claim for breach of a contract establishing a debt. *See, e.g., Valley Nat'l Bank* v. *Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453-54 (S.D.N.Y. 2003).

The defense of unclean hands is similarly defective. The equitable defense of unclean hands is inapplicable as a matter of law in an action that, like this action, seeks money damages.[9]

Similarly, the affirmative defense of bad faith fails as a matter of law. Simply seeking to enforce the terms of a contract cannot violate the obligation of good faith and fair dealing under New York law. *See M/A-COM Sec. Corp.* v. *Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may

---

[9] *See, e.g., Aniero Concrete Co.* v. *New York City Constr. Auth.*, No. 94 Civ. 3506 (CSH), 2000 WL 863208, at *10 (S.D.N.Y. June 27, 2000) ("[U]nclean hands is an equitable defense to equitable claims, not to actions at law which seek money damages.") (citation omitted); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 742 (S.D.N.Y. 1989) ("[A] defense [of unclean hands] is unavailable in a contract action for damages.") (citing *Pecorella* v. *Greater Buffalo Press, Inc.*, 486 N.Y.S.2d 562, 563-64 (4th Dep't 1985)); *518 East 80th St. Co.* v. *Smith*, 674 N.Y.S.2d 680, 681 (1st Dep't 1998) (holding that equitable defense of unclean hands is unavailable against claims for damages).

incidentally lessen the other party's anticipated fruits from the contract." (citation and internal quotation marks omitted)).

The Republic of Argentina cannot use the obligation of good faith and fair dealing to create terms that are inconsistent with the other terms of the contractual relationship. "[C]ourts will not allow the imposition of such a duty to conflict with the other terms of the parties' contractual relationship." *Wolff* v. *Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2003) (applying New York law and citing *Dalton* v. *Educ. Testing Serv.*, 663 N.E.2d 289, 292 (N.Y. 1995) (further citation omitted)), *aff'd*, 65 Fed. Appx. 736 (2d Cir. 2003)); *see also Times Mirror Magazines, Inc.* v. *Field & Stream Licenses Co.*, 294 F.3d 383, 394 (2d Cir. 2002) (citing *Dalton*, 663 N.E.2d 289, to explain that "no obligation can be implied that would be inconsistent with other terms of the contractual relationship" and holding that plaintiff "cannot avoid the express terms of the contract by relying on the implied covenant of good faith and fair dealing").

Here, the Republic of Argentina in substance proposes that only bondholders acting with an approved intent may enforce their contractual rights to payment. But in the prospectus supplements and the Fiscal Agency Agreement, the Republic of Argentina imposed no such condition, and it was able to market the Debt Securities for the prices it realized based on the assurance (among others) that the Debt Securities were "unconditional" obligations of the Republic of Argentina. (Brodsky Decl. Ex. A, at A-7.) The Republic of Argentina cannot now import into the Debt Securities a new and extraordinary term that, for obvious reasons, it failed to include in the original contract documents. "[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract."

CONFIDENTIAL — SUBJECT TO COURT ORDER    25

*Wolff*, 210 F. Supp. 2d at 497 (citing *Granite Partners, L.P.* v. *Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998)); *see also Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (holding under New York law that the implied covenant of good faith and fair dealing cannot "add to the contract a substantive provision not included by the parties" (citation and internal quotation marks omitted)).

**Conclusion**

For the foregoing reasons, the Court should enter summary judgment awarding ACP the sum of $31,153,000, which is the original principal amount of the debt securities beneficially owned by ACP, plus accrued and unpaid interest, including capitalized interest, and prejudgment interest.  The Court should further enter summary judgment awarding ACM the sum of $25,772,000, which is the original principal amount of the debt securities beneficially owned by ACM, plus accrued and unpaid interest, including capitalized interest, and prejudgment interest.

Dated:  New York, New York
        April 28, 2008

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: *Walter Rieman* / CNR

Walter Rieman (wrieman@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Plaintiffs