```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,        :

                       Plaintiffs,          :          07 Civ. 2715 (TPG)

            - against -                      :          **OPINION**

THE REPUBLIC OF ARGENTINA,                 :

                       Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,        :

                       Plaintiffs,          :          07 Civ. 11327 (TPG)

            - against -                      :

THE REPUBLIC OF ARGENTINA,                 :

                       Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BLUE ANGEL CAPITAL I LLC                   :

                       Plaintiffs,          :          07 Civ. 2693 (TPG)

            - against -                      :

THE REPUBLIC OF ARGENTINA,                 :

                       Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

-2-

```
------------------------------x
AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,   :

                Plaintiffs,          :    09 Civ. 8757 (TPG)

        - against -                  :

THE REPUBLIC OF ARGENTINA,           :

                Defendant.           :
------------------------------x
AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,   :

                Plaintiffs,          :    09 Civ. 10620 (TPG)

        - against -                  :

THE REPUBLIC OF ARGENTINA,           :

                Defendant.           :
------------------------------x
```

In certain of these cases judgments have been entered and in certain of the cases judgments have not yet been entered but are likely to be entered. On February 23, 2010 the court signed pre-judgment orders of attachment and post-judgment restraints and orders of execution, applicable to the respective cases. These orders are directed to custodial securities accounts in the name of an entity known as ANSES, which, for present purposes is deemed to be one and the same as the Republic of Argentina. The accounts of ANSES are with a branch of Citibank located in Buenos Aires, Argentina. It is

said that these accounts involve securities worth billions of U.S. dollars. Citibank is an international banking institution, with headquarters located in New York City.

It should be noted at the outset that, in a prior proceeding, plaintiffs sought to attach, restrain, and execute against bank accounts of ANSES in New York City. The court issued process, as a result of which approximately $200 million was tied up, all or almost all of which was on deposit at Citibank in New York City. These were not custodial accounts for securities. On October 15, 2009, the Court of Appeals reversed the District Court and held that the attachments, restraints and executions were invalid. <u>Aurelius Capital Partners, LP v. Republic of Argentina</u>, 584 F.3d 120 (2d Cir. 2009).

In the current proceeding plaintiffs contend that they are making claims which were not dealt with in the rather narrow ruling of the Court of Appeals. Moreover, they assert rights against different accounts and different property than what was involved in the earlier proceeding. This court will not attempt in this opinion to resolve the issues about the scope of the Court of Appeals ruling. The parties have focused, quite properly, on a threshold issue. That issue is whether the assets in the custodial accounts in Argentina can be considered to be assets located in the United States, particularly for purposes of applying the Foreign Sovereign Immunities Act.

At first blush, it might seem obvious that assets deposited in a account in Argentina would be assets located in that country and not in the United States. However, the matter is not so simple. There are issues of substance which must be decided. There are two motions before the court. One is by the Republic to vacate the attachments, restraints and executions. The other is by plaintiff to confirm them.

## Facts

Citibank, as described above, has its headquarters in New York City. It has branches throughout the world, including Argentina. ANSES has custodial accounts at the Buenos Aires branch of Citibank. The custodial accounts relate to securities. However, the custodial accounts do not contain physical share certificates or other documents embodying the securities. The securities on deposit are reflected in an entirely non-physical form. A custodial account, quite different from a regular bank account, is an account with regard to which Citibank performs a variety of services. Citibank will purchase securities for the account, sell securities, provide investment information and advice, and handle in an appropriate way cash dividends, stock dividends, stock splits, etc. In a custodial account the custodian is responsible for forwarding to the client reports and proxy statements, and is responsible for following instructions regarding the votes at meetings held by the issuing companies. The record indicates that a substantial amount of service

-5-

regarding Citibank's custodial accounts, including accounts in Argentina, are carried out at a central facility operated by Citibank in the United States.

However, to the extent that there have been personal contacts between ANSES representatives and Citibank regarding the custodial accounts, these contacts have all taken place in Argentina with the Citibank branch there. There is no evidence that ANSES, or any representative of ANSES, ever came to the United States for any dealings regarding the custodial accounts in Argentina.

As far as the legal status of the Buenos Aires branch of Citibank, it is registered to do business in Argentina, but is not a separate corporation. It is simply a branch of the United States corporation. It is clear that the legal responsibility for the proper handling of the custodial accounts, and the securities deposited there, rest with Citibank, the United States banking institution, rather than with the branch in Buenos Aires. If there would ever be a question of liability with regard to the billions of dollars of securities on deposit at the branch in Buenos Aires, that liability would surely not be the liability of the branch, but of the parent corporate entity.

## Discussion

Certain state law doctrine will be discussed, but the ultimate issue arises under the Foreign Sovereign Immunities Act, specifically 28 U.S.C. § 1610. With respect to post-judgment process, the issue is whether the assets

are "property in the United States of a foreign state . . . used for a commercial activity in the United States." This condition must be met before there can be post-judgment process against the assets. 28 U.S.C. § 1610(a). With regard to pre-judgment attachment, the language is slightly different, although the substance is essentially the same. The issue there is whether the assets are "property of a foreign state . . . used for a commercial activity in the United States." 28 U.S.C. § 1610(d).

There is authority to the effect that, in connection with intangible property, the location of the property is deemed to be the location of the garnishee. This has been held to be the case in an action under the Foreign Sovereign Immunities Act. In <u>Af-Cap, Inc. V. Republic of Congo</u>, 383 F.3d 361 (5th Cir. 2004), the court held that the situs of royalty obligations was the situs of the garnishees, located in the United States. The New York Court of Appeals has adopted essentially the same principle in dealing with state law issues (not issues under the FSIA). <u>Hotel 71 Mezz Lender LLC v. Falor</u>, 2010 WL 519821 (N.Y. Feb. 16, 2010); <u>ABKCO Indus., Inc. v. Apple Films, Inc.</u>, 39 N.Y.2d 670 (1976).

In the present case, the garnishee is, of course, Citibank, and to plaintiffs there is one Citibank, the company headquartered in the United States, not multiple Citibanks. Thus, the situs of the intangible property in question is the United States, according to plaintiffs.

The above cases are indeed important support for the plaintiffs' position that the assets in question are in the United States. However, these cases dealt with clearly defined single obligors who were located only in the United States (in connection with the federal case), and in New York State (in connection with the New York cases). These cases do not expressly deal with the issue of an obligor, such as Citibank, which is, through its branches, located in many countries.

There are two cases decided in this district, which do indeed deal with international banks. Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp., 921 F. Supp. 1113 (S.D.N.Y. 1996); Motorola Credit Corp. v. Uzan, 288 F. Supp. 2d 558 (2003). Fidelity Partners was under the FSIA. Motorola was under New York law. Both cases applied a doctrine known as the "separate entity rule." Under this rule each branch of a bank is a separate entity - that is, separate from the head office and separate from other branches. Thus, in Fidelity Partners, the court declined to treat the head office and branches of the Philippine National Bank as a single entity, for purposes of the FSIA. The court further held that, although a bank account might be considered intangible assets not physically located in an ordinary sense, the situs was the home office of the bank in the Philippines where the deposit transaction occurred. In Motorola the court tentatively applied the separate entity rule as to banks with offices in New York and abroad, subject to further

-8-

proceedings seeking possible relief from strict application of that rule.

There appears to be no federal appellate decision on the issues involved in <u>Motorola</u> and <u>Fidelity Partners</u>. In any event, although these decisions are instructive, they are not dispositive. Plaintiffs are correct in contending that a custodial account, for the handling of securities is different from a regular bank account. A custodial account involves a range of services completely unknown to a regular bank account. These services can be, and were in the case of Citibank, performed at a central facility. In the case of Citibank, that facility is in the United States. The issue remains, after recognizing the import of the cases just discussed - What is the situs of the intangible assets deposited in a custodial account at a foreign branch of a United States bank? The intangible assets have no physical location. The court accepts the idea that the location of the intangible assets should generally be the location of the garnishee. But what is the location of the garnishee when that garnishee is an entity located in different places?

All parties have referred the court to the Uniform Commercial Code. The Code is part of the law of the State of New York. UCC § 8-112(c) provides:

> (c) The interest of a debtor in a security entitlement may be reached by a creditor only by legal process upon the securities intermediary with whom the debtor's securities account is maintained . . . .

-9-

Plaintiffs assert, of course, that the securities intermediary is Citibank, and that this means Citibank, the United States entity, not some branch, which is not that entity in any legal sense.

The Republic and Citibank agree that th UCC should be applied, and they denominate the securities intermediary as "Citibank Argentina." Plaintiffs point out, quite correctly, that there is no entity known as "Citibank Argentina" in any legal sense.

But the question remains under the UCC, as to how to interpret "securities intermediary" in a situation of an international bank with the home office in New York and branches abroad. The term is not self-defining.

In the view of the court, the references to case law and to the UCC are instructive and helpful to some extent, but it is necessary to recognize that the ultimate issue arises under the FSIA. The question is whether the intangible property, resulting from deposit transactions between ANSES and the Buenos Aires branch of Citibank, can be considered as "property in the United States" and "property . . . used for a commercial activity in the United States." 28 U.S.C. §§ 1610(a) and (d). The court will assume (without deciding) that the property is being used for commercial activity. Then the question is whether the property is in the United States and is used for such activity in the United States. The court believes that this issue is resolved on the basis of rudimentary facts.

All the dealings of ANSES in setting up the accounts, depositing securities into the accounts (whether electronically or by paper), giving instructions to Citibank regarding the accounts, receiving advice regarding the accounts, directing the sale and purchase of securities - all were made between ANSES and the Citibank branch in Argentina. Although the property is properly regarded as intangible property, there were and still are actual live transactions regarding that property, all of which have taken place, and are taking place, in Argentina. As far as the use of the assets for whatever activity they are used for, this would surely involve dealings in Argentina by ANSES, and between ANSES and the Citibank branch there.

Thus, the court concludes that the property in question is not located in the United States. The court further concludes that, even if the property is being used for commercial activity, this use is not occurring in the United States. Thus the assets in the custodial accounts are immune from attachment, restraint and execution.

The court wishes to note that it has considered the New York case Koehler v. The Bank of Bermuda Ltd., 12 N.Y.3d 533 (2009), relied on by plaintiffs, but finds that it is not on point. The court has also considered the Republic's argument that § 8-110(e)(2) of the UCC determines a securities intermediary's situs, but concludes that this section relates to choice of law, not situs.

-11-

For these reasons, the motion to confirm the process of February 23, 2010 is denied, and the motion to vacate such process is granted.

In response to the application of plaintiffs, the implementation of the court's ruling is stayed until further order of the court. The purpose is to allow a brief time to consider whether there should be a stay pending appeal, and to consider whether there can be a stay which would allow normal business in the custodial accounts to be carried on.

SO ORDERED.

Dated:    New York, New York
         March 5, 2010

_____
THOMAS P. GRIESA
U.S.D.J.